No. 22,718.

THE CENTRAL TRUST COMPANY, as Administrator of the Estate of W. W. MILLS, Deceased, *Appellant*, V. ISAAC ADAMS, *Appellee.*

No. 22,719.

*In re* The Estate of W. W. MILLS, Deceased (THE CENTRAL TRUST COMPANY, as Administrator, etc., *Appellant*, V. ISAAC ADAMS [Claimant], *Appellee*).

SYLLABUS BY THE COURT.

SALE—*Goods on Credit—Installment Notes—Partial Payments—Default As to Balance — Resale of Goods by Seller — Election of Remedies.* Goods were sold on credit, installments of the price were represented by promissory notes, title passed to the buyer, possession remained with the seller, and delivery was to be made on full payment of the price. The buyer paid some of the notes, and then defaulted. The seller, after notice to the buyer, resold the goods in proper manner, and applied the proceeds to satisfaction of the oldest dishonored notes. Two notes remained unpaid. The buyer died, and the unpaid notes were presented as claims against his estate. The administrator of the estate then sued the seller for the portion of the price which the buyer had paid. *Held,* the seller's election to resell constituted an election of remedy, the unpaid notes, which represented price, were abandoned as causes of action, and the seller was limited to an action for damages to complete his relief. *Held further,* the effort of the seller to recover on the notes did not recall his election, and did not constitute an election of remedy which enabled the administrator to maintain his action.

Appeals from Shawnee district court, division No. 2; GEORGE H. WHITCOMB, judge. Opinion filed June 5, 1920. No. 22,718 affirmed. No. 22,719 reversed.

*James A. Troutman, Bennett R. Wheeler, S. M. Brewster,* and *John L. Hunt,* all of Topeka, for the appellant.

*Z. T. Hazen,* of Topeka, for the appellee; *Isaac Adams,* of Denver, Colo., *pro se.*

The opinion of the court was delivered by

BURCH, J.: These cases grew out of a sale of shares of corporate stock, and are to be determined by application of principles of the law of sales, including election of remedy.

Trust Co. v. Adams.

Adams purchased shares of the capital stock of the Mills Dry Goods Company. He had an agreement with the company that it would take back the stock should he so desire. Adams became dissatisfied with the stock, and sold it to W. W. Mills, who at the time was president of the dry goods company. The memorandum of sale reads as follows:

"January 23, 1915.

"MEMORANDUM RECEIPT AND AGREEMENT.

"Received of Mr. W. W. Mills his personal check for $314.20 and eight promissory notes for $500 each, dated February 1, 1915, due on the first day of March, April, May, June, July, August, September and October, 1915, each bearing six per cent interest from date, all payable at the Central Savings Bank of Oakland, Cal., being purchase price of 40 and 7/10 shares of the capital stock of the Mills Dry Goods Company, incorporated under the laws of the state of Kansas, represented by certificates Nos. 574, 575, 580, 581, and 605, which said · stock and certificates I hereby agree to transfer to said W. W. Mills on the full payment of said purchase price of $4,314.20.        "[Signed]   ISAAC ADAMS."

The first four notes were paid at maturity. Default was made in payment of the note due July 1, and in payment of the notes subsequently maturing. In January, 1916, after due notice to Mills, Adams resold the stock at private sale. The proceeds of the resale were applied to payment of the notes maturing July 1 and August 1, 1915, and satisfied them. Afterwards Mills died, and the unpaid notes which had matured on September 1 and October 1, 1915, were presented to the probate court, and allowed as valid claims against his estate. The administrator appealed to the district court. The claim against the Mills estate was filed in the probate court on November 20, 1918. On December 6, 1918, the administrator sued Adams to recover the cash payment acknowledged in the memorandum of sale, and to recover the sums advanced to satisfy the four notes which Mills paid. The theory of the petition was that by reselling the stock Adams rendered himself unable to perform the contract, and consequently should return the portion of the price which he had received. The appeal from the probate court and the suit against Adams were heard together in the district court, and the administrator was defeated in both proceedings.

The sale was obviously a sale on credit. The memorandum regards the portion of the price evidenced by the notes as unpaid. The certificates of stock were to be delivered on pay-

ment of the full purchase price, and if the cash and notes paid the price in full, the certificates were deliverable at once, and there was no occasion for the memorandum.

While the subject is not important, the parties have relieved the court from determining whether or not title to the stock passed with the execution of the memorandum of sale. In the administrator's petition it is alleged that the title did pass, and Adams assents.

The memorandum of sale created no contract lien of any kind to secure payment of the notes, and there is no evidence of any collateral contract, oral or written, creating any form of lien to secure payment of the notes. We start, therefore, with a very simple and very common transaction. There was a sale of goods on credit, installments of the price were represented by notes, title passed to the buyer, possession remained with the seller, and delivery was to be made on full payment of the price.

The buyer defaulted. His delinquency was persistent, so far as the evidence discloses was unexplained, and the seller was at liberty to choose some remedy from those which the law afforded him. He chose the remedy of self-help, resold the goods, and applied the proceeds of the resale to satisfaction of the oldest notes.

There is debate in the books concerning the capacity in which a seller like Adams acts when holding the goods, and when reselling them for the account of the buyer. Much of the debate is logomachy, resulting from the craving to name, and by naming to bring within some established general category, something not quite fitting into such category. The word "lien" is broad enough and descriptive enough to permit its employment in this connection; and it is enough to designate it "seller's lien." Likewise when the seller resells the goods, it is enough to say that he acts as a seller having a seller's lien.

It is quite elementary that just before resale of the stock Adams stood at a point from which three paths diverged. He could eliminate the contract by rescinding the sale, treat the goods as his own, and do as he liked with them. He could affirm the contract, treat the buyer's obligation as subsisting, tender the goods to him or keep them for him, and enforce

payment of the price.  He could treat the contract as broken, resell the goods to recompense himself, as far as possible, for whatever loss he had sustained, and sue for the remaining damages.  He could take one path and only one, and having made a choice, he could not afterwards return to the starting place and take another.

Adams testified that he resold the stock as collateral security for the debt.  The testimony is not important, because it amounts to no more than his characterization of the nature of a past transaction.  It adds nothing to the facts which have been stated, and the court must deduce legal consequences from the facts rather than from his opinion.

The administrator would infer intention to rescind from the fact of resale, and there are some authorities to the effect that resale works rescission.  The better view is that intention to rescind is not necessarily indicated by resale, because resale is perfectly consistent with intention to insist on damages for breach of contract, and the law does not execute an intention to rescind when none has been manifested.  If in this instance the seller, before resale, had voted the stock at a corporate meeting, or had otherwise exhibited a distinct purpose to resume full dominion over the stock, rescission would be inferred; but without something more than resale, the natural conclusion is that the seller merely intended to fix his damages.

Resale did establish a criterion for admeasurement of the seller's damages.  There is no complaint about time, place, method, or result of the sale, and presumably the amount of the damages was the difference between the sum received and the contract price.  Election to resell, however, constituted an election of remedy, which precluded the seller from afterwards suing for the price or the unpaid portion of the price.  He could do that only on the theory that he held the stock subject to the buyer's order, and resale made it impossible for him to comply with the buyer's order and deliver the stock on payment or collection of the price.  (Note, 42 L. R. A., n. s., 669, 672.)

When the seller elected to take damages instead of price, he elected to renounce recovery on the notes.  They were obligations to pay price, and not damages.  The probate court could not adjudicate damages, and its allowance of the

abandoned notes as a claim against the Mills estate was a judicial error, which the district court repeated.

The administrator's action against Adams treats presentation of the notes to the probate court as a first election between inconsistent courses of conduct, and acquiesces in that election. The court does not regard invoking aid of the probate court as an intentional recalling of the election made by resale of the stock. It so happened that after application of the proceeds of resale, the unpaid notes exactly or substantially equaled the remainder of the damages resulting from breach of the contract, and Adams simply mistook his remedy. He had no cause of action on the notes, and no choice between remedies, after the irrevocable act of resale. But one remedy was then available, an action for damages, and his attempt to complete his relief by unauthorized means did not constitute an election, within the proper meaning of that term, which applies to the first pronounced act of election. (Note, Ann. Cas. 1913 D, 1199.)

The judgment in the case originating in the probate court is reversed, and the cause is remanded with direction to render judgment against the claimant. The judgment in the case originating in the district court is affirmed.